NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

BONNIE S., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, C.S., N.H., *Appellees*.

No. 1 CA-JV 21-0129
FILED 11-16-2021

Appeal from the Superior Court in Maricopa County
No. JD36834
The Honorable Robert Ian Brooks, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Jennifer M. Perkins joined.

---

**C R U Z**, Judge:

¶1            Bonnie S. ("Mother") appeals the superior court's order terminating her parental relationship to her children C.S. and N.H.  For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2            Mother is the biological parent of C.S., born January 2014, and N.H., born June 2018.  Christopher Hanna ("Father")[1] is the biological father of N.H.  The identity of C.S.'s biological father is unknown.  In 2014 and 2018, the Nevada Division of Child and Family Services received reports of substance abuse and neglect, but the allegations were never substantiated. Mother and Father also had multiple interactions with the Nevada police department because of domestic violence.  The family relocated to Arizona in October 2018 and was homeless or living out of motels.

¶3            In November 2018, the Department of Child Safety ("DCS") received a report that police were called to Mother's motel room where they located heroin and drug paraphernalia within the children's reach.  The following month, DCS received reports that Mother and Father were leaving the children with strangers, the family had no place to stay, and Father was abusing Mother and C.S.

¶4            DCS filed a dependency petition in December 2018, alleging the children were dependent as to Mother due to neglect and substance abuse.  DCS stated Nevada was the children's home state but invoked temporary emergency jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), Arizona Revised Statutes ("A.R.S.") section 25-1034. When the children came into DCS custody, they were dirty, developmentally delayed, and diagnosed with trauma disorders. C.S. was sick for the first month he was placed in DCS's care and suffered from a double ear infection and asthma.  N.H. was hospitalized for

---

[1]        Father is not a party to this appeal.

two weeks and diagnosed with norovirus, bronchitis, rhinovirus, pneumonia, E-coli, and RSV.

¶5            DCS offered Mother substance-abuse treatment through Terros, drug testing through PSI, transportation, case aides, counseling, a psychological consultation, and visitation.  However, Mother failed to fully participate in DCS services.  Mother did not submit to drug testing through PSI, and she refused to participate with Terros.  Mother was inconsistent with attending her visits and often failed to call or show up.  Three case-aide referrals were closed out unsuccessfully due to Mother's failure to participate.

¶6            Mother sporadically received treatment from a methadone clinic over a several-month period in 2019.  Mother submitted three drug tests to the clinic and tested positive for substances each time.  The clinic additionally recommended that Mother regularly participate in counseling and other services, but she failed to do so.

¶7            Mother and Father returned to Nevada in October 2019.  DCS provided Mother with two out-of-state referrals for drug testing and provided her a list of substance-abuse treatment and counseling services that were covered by her insurance.  But again, Mother failed to engage.

¶8            In November 2019, DCS filed a motion to terminate Mother's parental rights, the superior court granted the motion following a hearing, and Mother timely appealed.  On appeal, DCS filed a notice of confession of error, stating the superior court lacked permanent jurisdiction under the UCCJEA.  This court agreed, and the case was remanded to the superior court to determine its jurisdiction and for further proceedings consistent with that jurisdiction.  On remand, the superior court issued an order that stated the "prior dependency orders will become a final determination and Arizona will become the home state" if the parents did not file "family court orders in another jurisdiction" within a month.  Neither Mother nor Father filed court orders in Nevada.  Accordingly, a month later, the superior court issued an order finding that it had ongoing jurisdiction and Arizona was the children's home state.

¶9            In September 2020, DCS filed another motion to terminate Mother's parent-child relationship based on substance abuse, six months' time-in-care as to N.H., and nine months' time-in-care as to C.S.  DCS also filed a motion to suspend visitation, arguing visits "would subject the children to potential harm to their physical, mental, moral or emotional health."  DCS noted the parents failed to communicate with DCS, had not

engaged in services, and had not seen the children in over a year. The court granted DCS's motion to suspend visitation.

¶10　　In December 2020, Mother began engaging in substance-abuse treatment and domestic-violence counseling with Father through an agency in Nevada. Mother also submitted two drug tests to the agency, which were allegedly negative for substances, though no documentary proof was submitted to the court. Three weeks later, the termination adjudication hearing was held, and the superior court granted DCS's motion to terminate Mother's parental rights to C.S. and N.H.

¶11　　Mother timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

¶12　　The right to custody of one's children is fundamental, but it is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). The superior court may terminate a parent-child relationship if it finds clear and convincing evidence of at least one statutory ground for termination under A.R.S. § 8-533(B), and that termination is in the child's best interests. *Id.* at ¶ 12. "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). Accordingly, we accept the court's factual findings if reasonable evidence supports them and will affirm its termination ruling unless it is clearly erroneous. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016).

I.　　DCS Properly Terminated Mother's Rights Based on Substance Abuse and Time in Care.

¶13　　Mother argues her due process rights have been violated because the superior court relied on domestic violence as a basis for termination even though it was not alleged in DCS's termination motion. Mother was receiving domestic-violence counseling throughout the dependency and was aware this was an area of concern for DCS. Additionally, at the termination hearing, both DCS and Mother's counsel introduced evidence regarding domestic violence and domestic-violence services, and Mother did not object. *See Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 447, ¶ 37 (2018) (when a parent fails to object to alleged due process violations in the superior court, we review only for fundamental error). As a result, the superior court briefly discussed domestic violence

between Mother and Father in its termination ruling as evidence in support of the time-in-care ground. Regardless, the superior court need only find one statutory ground to support a termination, and Mother's parental rights were also terminated on the ground of substance abuse, which was raised in DCS's motion to terminate.

¶14    Under A.R.S. § 8-533(B)(3), the superior court must find that Mother's drug abuse is chronic, it hinders her ability to discharge her parental responsibilities, and it will continue for a prolonged indeterminate period. Mother enrolled in a methadone clinic in February 2019, where she admitted to using opiates every day for the past fifteen years and heroin for about two years. Mother submitted three drug tests to the clinic in March, July, and September 2019, and tested positive for substances each time, including fentanyl, methamphetamines, opiates, amphetamines, codeine and morphine. As a result of Mother's substance-abuse problems, she was unemployed and homeless or living out of motels with the children. Mother allegedly left the children in the care of strangers, sometimes for days at a time, so she could use drugs. Father claimed Mother gave the children heroin and marijuana to make them fall asleep. When DCS took custody of the children, they were dirty, developmentally delayed, and suffering from multiple illnesses and trauma.

¶15    In determining whether a parent would be able to overcome her substance abuse and "be in a position to parent the child in the foreseeable future," the court considers "the treatment history of the parent." *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 378, ¶ 25 (App. 2010) (citation omitted). When the parent has been unable to "experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting." *Id.* (citation omitted). Mother's demonstrated sobriety began three weeks before the termination hearing, and she "has been unable to rise above [her] addiction in a non-custodial and unstructured setting." *Id.* at 379, ¶ 29. Additionally, during trial, Mother denied having a substance-abuse problem, and she was not forthcoming about her drug abuse, testifying she had only used fentanyl and heroin once or twice as a teenager. Mother's long history of substance abuse and her failure to be forthcoming throughout the dependency and termination proceedings raises concerns about her ability to overcome her drug addiction and appropriately parent her children.

¶16    Mother does not challenge the superior court's findings of substance abuse, and the record supports the termination finding on this

ground. The court did not err in terminating Mother's parental relationship to C.S. and N.H.

## II.     DCS Provided Appropriate Reunification Services.

**¶17**     Before terminating parental rights, DCS must prove by clear and convincing evidence that it made a reasonable effort to preserve the family and provide reunification services. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192-93, ¶¶ 33, 42 (App. 1999). Mother argues DCS did not provide her meaningful reunification services, but she failed to raise any concerns to the superior court prior to the termination hearing. A parent who fails to "voice their concerns about services to the juvenile court in a timely matter," is precluded from challenging the court's finding that DCS made reasonable efforts to provide reunification services. *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178-79, ¶ 16 (App. 2014).

**¶18**     Nevertheless, DCS made a reasonable effort to provide Mother with appropriate reunification services. Mother alleges she did not have valid identification to participate in drug testing through PSI, and DCS refused to assist her in obtaining identification. However, DCS denied that Mother ever requested assistance in obtaining identification, and Mother did not need identification to participate in random drug testing. A DCS case manager created an account for Mother through PSI's database and uploaded a picture of her, which allowed Mother to participate in random drug testing without necessitating any other form of photo identification.

**¶19**     Mother argues she was not a permanent resident of Arizona, and so it was difficult for her to obtain insurance and housing. At trial, there was testimony that Mother did have insurance, and there was no evidence presented that Mother was unable to participate in any of the offered services due to a lack of insurance. As for housing, Mother was placed in a domestic-violence shelter through Terros in December 2018, but two days later she voluntarily left the shelter and reunited with Father. DCS informed Mother that it could not provide her with a housing subsidy until she addressed her substance-abuse issues, which she never did.

**¶20**     Mother also argues that because she was not a resident of Arizona, it was difficult to participate in services after returning to Nevada. We first note that Mother chose to return to Nevada about a year after the dependency was initiated. She was given the opportunity to have this case and the children moved to Nevada, but Mother did not make the requisite filings to do so. Additionally, for nearly a year of the dependency, Mother lived in Arizona, and DCS provided her with drug testing, substance-abuse

treatment, domestic-violence counseling, visitation, and transportation. After Mother moved to Nevada, DCS was not able to make out-of-state referrals for counselors and substance-abuse treatment. However, DCS did provide a list of substance-abuse treatment centers covered under Mother's insurance and directed Mother to self-refer. DCS also referred Mother to out-of-state drug testing on two separate occasions.

**¶21** DCS "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers." *Maricopa Cnty. Juv. Action No. JS–501904*, 180 Ariz. 348, 353 (App. 1994). Here, DCS provided "[M]other with the time and opportunity to participate in programs designed to help her become an effective parent." *Id.* However, Mother did not fully engage with DCS or participate in the offered services for two years, and she did not participate in substance-abuse treatment and counseling until three weeks before the termination hearing. A parent's "failure or refusal to participate in the programs and services [DCS] offered or recommended does not foreclose termination of her parental rights." *Id.* We find no error.

## CONCLUSION

**¶22** For the foregoing reasons, we affirm.

